UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CITIZENS INSURANCE<br>COMPANY OF THE MIDWEST,<br><br>   Plaintiff,<br><br>v.<br><br>KIMBERLY PERRY and<br>CODY ADKINS,<br><br>   Defendant. | Case No. 22-12302<br>Honorable Laurie J. Michelson |

**OPINION GRANTING PLAINTIFF'S UNOPPOSED
MOTION FOR SUMMARY JUDGMENT [23]**

In February 2022, Cody Adkins was driving his mother's car on the highway when he lost control and hit a tree. Adkins did not have insurance to cover his medical expenses. His mother did, and Adkins was living with her at the time of the accident. That would ordinarily make Adkins a resident relative entitled to recover personal injury protection benefits from his mother's insurer, Citizens Insurance Company of the Midwest, under the Michigan No-Fault Act. But Citizens says that policy is void *ab initio* because it was obtained through fraud—Adkins was not disclosed as a household member or driver on his mother's insurance application.

So Citizens brought a declaratory judgment action against Adkins and his mother (*see* ECF No. 1) and now moves for summary judgment (*see* ECF No. 23). Citizens asks this Court to declare that it is entitled to rescind Kimberly Perry's policy and that it has no obligation to pay Adkins' PIP benefits. Perry and Adkins answered

Citizens' complaint (*see* ECF Nos. 8–9), but they have not responded to the summary judgment motion.

For the reasons that follow, the Court will grant the unopposed motion.

## I. Background

On a motion for summary judgment, the Court views the facts in the light most favorable to the nomovant, in this case Adkins and Perry. *See Raimey v. City of Niles*, 77 F.4th 441, 447 (6th Cir. 2023); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "But the situation here is unique because [Defendants] didn't oppose [Citizens'] motion for summary judgment. When that occurs, '[t]he facts presented and designated by the moving party were the facts at hand to be dealt with by the trial court.'" *Garnett v. Akron City Sch. Dist. Bd. of Educ.*, No. 22-3864, 2023 WL 6632836, at *1 (6th Cir. Oct. 12, 2023) (last alteration in original) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)). Thus, the Court may rely on, but must still "critically examine[,] the accuracy and context of this evidence advanced by the movant." *In re St. Clair Clinic, Inc.*, 73 F.3d 362, 1996 WL 6531, at *2 (6th Cir. 1996) (unpublished table decision).

### A.

In October 2021, Kimberly Perry applied for auto insurance, including personal injury protection coverage ("PIP benefits" or "no-fault benefits"), from Citizens Insurance Company of the Midwest through Knight Insurance Agency. (*See* ECF No. 1-1, PageID.16.) Perry listed herself as the only "resident and driver" of the two vehicles for which she sought insurance. (*See id.*) She did not identify Cody

Adkins, her adult son, on her application, nor did she later add Adkins as a resident or "regular or occasional driver of an insured vehicle." (*Id.* at PageID.19.)

Perry was approved for a one-year policy for both cars beginning on November 5, 2021. (*See id.* at PageID.21; ECF No. 8, PageID.106.) About three months into that policy, in February 2022, Adkins was driving his mother's Chevrolet Cruze when he got into an accident. (ECF No. 23-3.) He was speeding down a 70-mile-per-hour highway when he "lost control of the[] vehicle," "ran right off of [the] roadway[,] and struck a tree," according to the police report. (*Id.* at PageID.202–203.) Perry's car sustained "disabling damage" and Adkins was physically injured. (*See id.* at PageID.202.) He was hospitalized for three days (*see* ECF No. 23-4) and treated for various broken bones (*see* ECF No. 23-7, PageID.233).

Adkins did not own a vehicle or have automobile insurance at the time of the accident. (*See id.* at PageID.235.) So he filed a claim to recover PIP benefits from Citizens through the policy issued to his mother. (*See* ECF No. 1, PageID.6; ECF No. 8, PageID.106.) Citizens denied the claim. (*See* ECF No. 23-6.) It sent Adkins a letter two days after the car accident stating that, "based on [its] investigation to date and the information provided," Citizens was "not liable" for paying Adkins' PIP benefits under his mother's insurance policy. (*Id.* at PageID.213.) Instead, said Citizens, Adkins should file a claim with the Michigan Automobile Insurance Placement Facility, a program created under the Michigan No-Fault Act to provide PIP benefits to people who are injured in auto accidents but who do not have insurance coverage.

(*See id.*); Mich. Comp. Laws § 500.3172(1). Adkins did. (*See* ECF No. 8, PageID.106; ECF No. 23, PageID.191.)

### B.

The MAIPF "ha[d] not denied benefits" to Adkins as of the filing of Citizens' motion. (ECF No. 23, PageID.190.) But neither had it paid. (*See id.* at PageID.174–175.) So in August 2022, the University of Michigan Hospital sued Citizens and the MAIPF in state court, seeking to recover the medical expenses it incurred while treating Adkins' accident-related injuries. (*See* ECF No. 23-5 (hospital's complaint).) Farmers Insurance Exchange was later substituted for the MAIPF by stipulated order, presumably because the MAIPF assigned Adkins' claims to Farmers pursuant to Section 3172 of the No-Fault Act. *See* Stipulated Order, *Regents of Univ. of Mich. v. Citizens Ins. Co. of Midwest*, No. 22-001144-NF (Mich. Cir. Ct. Jan. 10, 2023); Mich. Comp. Laws § 500.3172.

About a month after the hospital filed suit, Citizens turned to this Court for relief. (*See* ECF No. 1.) It brought this lawsuit against Perry and Adkins, asking the Court to declare that (1) it has a right to rescind the insurance policy it issued to Perry and (2) Adkins is not entitled to any coverage under the policy. (*Id.* at PageID.7, 12.) Citizens asserts that because Perry failed to identify Adkins as a household resident and driver on her auto insurance application, she obtained her policy through fraud. (*See id.* at PageID.8–9.) Had Adkins been named in Perry's application, "there would have been a substantial increase in the premium" she was charged, says Citizens. (*Id.* at PageID.6–7.) In turn, Citizens contends that Perry's

4

policy is void *ab initio* and unenforceable. (*Id.* at PageID.11–12.) And because it is as though it never existed, Perry's policy does not cover Adkins' PIP claim. (*Id.* at PageID.13.)

Following the close of discovery, Citizens moved for summary judgment on both counts, requesting the same declaratory relief it requested in its complaint. (*See* ECF No. 23.) The Court has reviewed the record and briefing and finds that oral argument is not needed to resolve the unopposed motion. *See* E.D. Mich. LR 7.1(f).

## II. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Because Citizens seeks summary judgment on claims for which it would bear the burden of persuasion at trial, its initial summary judgment burden is higher. Its showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [it]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules*, 99 F.R.D. 465, 487–88 (1984)); *see Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012).

Although Citizens' summary judgment motion is unopposed, the Court "still ha[s] a job to do." *Garnett*, 2023 WL 6632836, at *2; *see Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 381 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has

5

not responded." (quoting *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991))). The Court "must review carefully the evidence that was designated by the moving party" to ensure it has discharged its burden. *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, 2000 WL 1800475, at *3 (6th Cir. 2000) (per curiam) (unpublished table decision).

But "it is not the role of the district court to develop facts for the nonmoving party," *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003), and "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record," *Guarino*, 980 F.2d at 406. Indeed, "[i]t is 'utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.'" *Garnett*, 2023 WL 6632836, at *2 (citation omitted). "The court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones*, 2000 WL 1800475, at *3.

### III. Analysis

Under the Michigan No-Fault Act, *see* Mich. Comp. Laws §§ 500.3101–.3179, a person who is injured in a motor vehicle accident may be covered by the insurance policy issued to a relative "domiciled in the same household" if the injured person did not carry their own no-fault insurance policy at the time of the accident, *id.* § 500.3114(1). But even claims for such PIP benefits are susceptible to common law defenses that were not abrogated by the No-Fault Act, such as common law fraud. *See Meemic Ins. Co. v. Fortson*, 954 N.W.2d 115, 121 (Mich. 2020); *Bazzi v. Sentinel*

6

*Ins. Co.* (*Bazzi II*), 919 N.W.2d 20, 25, 28–29 (Mich. 2018). If an insurer can show that the insured relative (1) knowingly or recklessly (2) made a material misrepresentation (3) that was false (4) with the intention that the insurer should act in reliance upon the misrepresentation, and that the insurer (5) relied upon the misrepresentation and thus (6) suffered injury, then the insurer has a right to seek rescission of the policy. *See Meemic*, 954 N.W.2d at 124 n.12 (citing *Titan Ins. Co. v Hyten*, 817 N.W.2d 562, 567–68 (Mich. 2012)).

That said, "rescission does not function by automatic operation of the law" if an innocent party's rights would be implicated. *See Bazzi II*, 919 N.W.2d at 30. The Court must balance the equities to determine whether rescission of a fraudulently obtained policy is warranted in the specific case. *See id.* And "when two equally innocent parties are affected, the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss." *Id.* (cleaned up).

Michigan courts consider a "nonexclusive list of factors" in innocent-third-party cases: (1) the insurer's ability to uncover the fraud prior to the accident; (2) the innocent third party's potential knowledge of the fraud; (3) the innocent third party's conduct in the injury-causing accident; (4) the availability of an alternate avenue of recovery for the innocent third party; and (5) whether, in the absence of the insurance policy, the fraudulently insured party would have tort liability to the innocent third party. *See Farm Bureau Gen. Ins. Co. of Mich. v. ACE Am. Ins. Co.* (*Farm Bureau I*), 919 N.W.2d 394, 396–97 (Mich. 2018) (Markman, C.J., concurring), *adopted by Pioneer State Mut. Ins. Co. v. Wright*, 952 N.W.2d 586, 595–96 (Mich. Ct. App. 2020);

*see also Nationwide Mut. Fire Ins. Co. v. Esurance Prop. & Cas. Ins. Co.*, No. 361298, 2023 WL 4044494, at *4–5 (Mich. Ct. App. June 15, 2023); *W. Bend Mut. Ins. Co. v. Affiliated Diagnostic of Oakland, LLC*, 657 F. Supp. 3d 989, 993–94 (E.D. Mich. 2023).

If the Court concludes that that balance weighs in favor of the defrauded insurer, the policy is declared void *ab initio* and is "considered never to have existed." *Bazzi II*, 919 N.W.2d at 29. In turn, the injured person who has neither their own no-fault coverage nor the coverage of a resident relative would be assigned an insurer by the Michigan assigned claims plan. *See* Mich. Comp. Laws § 500.3172(1).

## A.

The undisputed evidence shows the following: At the time of the accident, Adkins did not carry his own no-fault insurance policy and was living with his mother for purposes of the No-Fault Act. (*See* ECF No. 23-7, PageID.224, 248–251 (Perry's deposition).) Adkins had permission to drive Perry's Chevrolet Cruze several days a week, including on the day of the accident. (*See id.* at PageID.218, 241–242.) Perry did not identify Adkins in the insurance application she submitted to Citizens. (*See* ECF Nos. 1-1, 1-2 (auto insurance application and policy statement); *see also* ECF No. 23-7, PageID.243, 250–251.) That application instructed Perry to "[l]ist all residents and dependents (licensed or not) and regular operators" and to notify Citizens if "[a] family member not listed on this application becomes a resident of the applicant's household" or if "[a]ny person becomes a regular or occasional driver of an insured vehicle." (ECF No. 1-1, PageID.16, 19.) Citizens then issued Perry a policy of insurance, and Perry received a policy statement stating that Perry was "the only

8

driver[] for which this policy is rated. If there are other drivers in your household, please contact your insurance agent." (ECF No. 1-2, PageID.39.) Had Adkins been disclosed on Perry's application, her premium would have been approximately $2,912 rather than $1,401 for the year-long policy period. (*See id.* at PageID.38 (Perry's premium); ECF No. 23-8 (adjuster note providing increased premium quote).)

So as a threshold matter, Citizens has met its burden of showing that Perry procured her insurance policy by fraud. Accordingly, Citizens is entitled to rescind the policy unless Adkins is an innocent third party and the balance of equities weighs in Adkins' favor.

**B.**

The defense provides no evidence to suggest that Adkins was an innocent third party. On Citizens' unopposed motion for summary judgment, which Citizens has supported with ample evidence, that alone is enough to warrant rescission.

But Citizens took its motion one step further. It assumed, for argument's sake, that Adkins was "innocent to his mother's misrepresentations" (ECF No. 23, PageID.187–188), and analyzed the relevant balancing factors to show that the equities still weigh in its favor (*see id* at PageID.188–191). Citizens has carried its burden and adequately demonstrated that the totality of the circumstances entitles it to rescission.

The first factor courts consider in innocent-third-party cases is the extent to which the insurer could have uncovered the fraudulent misrepresentations before the accident. "The first factor does not impose a duty to investigate upon insurers . . . but

9

merely addresses the process of procurement of insurance and any information disclosed." *Pioneer*, 952 N.W.2d at 595 n.6.

Citizens contends that, based on the warnings it provides applicants about making misrepresentations and the false responses still provided by Perry, it was not in a position to uncover the fraud. (*See* ECF No. 23, PageID.189.) And, that there is nothing in the record to suggest that Citizens should have known that Adkins lived with Perry. (*See id.*) Indeed, nothing has been provided to the Court to counter Citizens' contention that it was unable to discover Perry's fraud. But when "[t]here is no evidence to suggest that there could or could not have been a more diligent effort on [the insurer's] part to discover contradictions or omissions in [the insured's] application any earlier," the Court cannot conclude that the first factor affirmatively weighs in the insurer's favor. *See Pioneer*, 952 N.W.2d at 595.

The second factor is "the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud." *Id.* This factor considers not only direct evidence of the third party's knowledge but also what the relationship between the insured and third party suggests about the third party's knowledge. *See Farm Bureau I*, 919 N.W.2d at 396–97 (Markman, C.J., concurring).

The relationship here is one of mother and son. They were living together. Adkins regularly used the car. Perhaps it is a fair inference that he knew, or should have known, he was not identified on the policy. *See Farm Bureau Gen. Ins. Co. of Mich. v. ACE Am. Ins. Co.* (*Farm Bureau II*), 972 N.W.2d 325, 335 (Mich. Ct. App.

10

2021) ("[A] close relationship allows for an inference that the third party knew of the fraud."); *see also Farm Bureau I*, 919 N.W.2d at 396–97. But there is nothing definitive in the record as to Adkins' knowledge.

The third factor—"the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event"—clearly weighs in favor of rescission. *Pioneer*, 952 N.W.2d at 595; *see Farm Bureau I*, 919 N.W.2d at 397 ("[E]quity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently.").

This factor is generally neutral or weighs against rescission when the third party "did nothing directly to cause the crash that resulted in their injuries," *Pioneer State Mut. Ins. Co. v. McCallister*, No. 359077, 2022 WL 4587178, at *4 (Mich. Ct. App. Sept. 29, 2022) (per curiam), as where the third party "was simply a passenger in [the] car and was not involved in the operation of the vehicle," *Pioneer*, 952 N.W.2d at 595, or "was in the crosswalk while the walk signal was on," *Farm Bureau II*, 972 N.W.2d at 336; *see also Farm Bureau Gen. Ins. Co. v. Meadows*, No. 358188, 2023 WL 174814, at *4 (Mich. Ct. App. Jan. 12, 2023) (third party was "merely a passenger"); *Graham by Johnson v. Jackson*, No. 346734, 2020 WL 3399567, at *5 (Mich. Ct. App. June 18, 2020) (same). Here, though, it is undisputed that the "injury-causing event" was a single-vehicle accident in which Adkins, "speed[ing] too fast" (ECF No. 23-3, PageID.202) on the highway, crashed Perry's car into a tree.

The fourth factor also weighs strongly in Citizens' favor.

11

As Citizens contends, "As soon as [it] learned of the fraud, it placed the Defendants on notice that any claim should be made with the MAIPF." (ECF No. 23, PageID.190.) It is undisputed that Citizens sent Adkins a letter two days after the accident stating that it had determined it was not responsible for payment of his PIP benefits and telling him to submit his claims to the MAIPF. (*See* ECF No. 23-6.) It is also undisputed that Adkins in turn timely submitted his claims. (*See* ECF No. 8, PageID.106.)

And as the University of Michigan Hospital asserts in its state-court suit against both Citizens and the MAIPF, if Adkins did not have PIP coverage through his mother at the time of the accident, then the No-Fault Act requires the MAIPF or an insurer assigned by the MAIPF to pay Adkins' PIP benefits. (*See* ECF No. 23-5, PageID.206–208 (citing Mich. Comp. Laws § 500.3172).) That case is still ongoing, with Adkins' claims seemingly assigned to Farmers Insurance Exchange. *See Regents*, No. 22-001144-NF (Mich. Cir. Ct. filed Aug. 24, 2022).

"Justice Markman's concurrence, which is the source of all the factors, specifically listed the MACP as an alternate source of recovery to be considered under factor four." *Meadows*, 2023 WL 174814, at *5 n.9 (citing *Farm Bureau I*, 919 N.W.2d at 397); *see also W. Bend*, 657 F. Supp. 3d at 999 & n.9 (collecting cases); *Nationwide*, 2023 WL 4044494, at *5–6 (concluding that the fourth factor "weighed heavily in favor of rescission," as the third party's "claims were assigned to Nationwide, who will continue to be his insurer if Esurance's policy is rescinded," and the third party "had already received medical treatment and had that treatment paid for by

12

Nationwide"). Here, Adkins has also already received the treatment he needed, and Citizens noted that as of when it filed its motion the MAIPF "has not denied benefits." (ECF No. 23, PageID.190.)

Finally, the fifth factor is whether, in the absence of the insurance policy, the fraudulently insured party would have tort liability to the innocent third party. In both *Farm Bureau II* and *Pioneer*, the fifth factor was found "simply inapplicable" when the fraudulent insured is not involved in the accident. *Farm Bureau II*, 972 N.W.2d at 336; *see Pioneer*, 952 N.W.2d at 596; *see also Graham*, 2020 WL 3399567, at *7. So, too, here. It is undisputed that Perry was not driving or involved in the relevant accident. "Accordingly, consistent with *Pioneer*, the fifth factor is not applicable in this case, and it does not weigh either in favor of or against rescission." *Farm Bureau II*, 972 N.W.2d at 336.

### C.

Importantly, these factors are "not merely to be counted up" but should be weighed with respect to "the ultimate issue" of "which innocent party should bear the loss." *Id.* at 337 (citing *Farm Bureau I*, 919 N.W.2d at 397). Ultimately, while some of the factors weigh more strongly in Citizens' favor than others, Citizens has carried its burden and has made a strong case that on this ultimate issue the equities favor rescission. Here, rescission will not affect Adkins' PIP coverage, as the MAIPF remains an alternate source of recovery. It follows that *neither* Adkins nor Citizens will bear the loss if Perry's policy is rescinded, whereas Citizens *would* bear the burden if the policy were not rescinded. "Under this practical reality, the only

13

reasonable outcome is rescission of the policy." *Meadows,* 2023 WL 174814, at *5; *see Nationwide,* 2023 WL 4044494, at *6.

## IV.

For the forgoing reasons, the Court GRANTS Citizens' motion for summary judgment (ECF No. 23). A separate judgment will follow.

SO ORDERED.

Dated: March 27, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
